*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0285p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

HERAL HOWARD, as Administrator of the Estate of
Tammy Howard,

*Plaintiff-Appellant,*

*v.*

PAUL BAYES, Individually; PAT MONTGOMERY,
Individually; MAGOFFIN COUNTY FISCAL COURT,

*Defendants-Appellees.*

No. 05-5076

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 02-00204—Danny C. Reeves, District Judge.

Argued: March 10, 2006

Decided and Filed: August 9, 2006

Before: SUHRHEINRICH, ROGERS, and COOK, Circuit Judges.

---

## COUNSEL

**ARGUED:** Ned B. Pillersdorf, PILLERSDORF, DEROSSETT & LANE, Prestonsburg, Kentucky, for Appellant. Jonathan C. Shaw, PORTER, SCHMITT, BANKS & BALDWIN, Paintsville, Kentucky for Appellees. **ON BRIEF:** Ned B. Pillersdorf, PILLERSDORF, DEROSSETT & LANE, Prestonsburg, Kentucky, for Appellant. Jonathan C. Shaw, Michael J. Schmitt, PORTER, SCHMITT, BANKS & BALDWIN, Paintsville, Kentucky for Appellees.

---

## OPINION

---

SUHRHEINRICH, Circuit Judge. Plaintiff-Appellant Heral Howard ("Plaintiff"), as administrator of the estate of Tammy Howard, appeals the grant of summary judgment for Defendants-Appellees Paul Bayes, Pat Montgomery, and Magoffin County Fiscal Court ("Magoffin County") (collectively, "Defendants") on Plaintiff's federal civil rights claim under 42 U.S.C. § 1983 and Plaintiff's wrongful death claim under Kentucky state law. Because Plaintiff has failed to allege a cognizable procedural due process violation, and because Plaintiff cannot establish a wrongful death claim under Kentucky state law, we **AFFIRM**.

1

## I.

The relevant facts are not in dispute. On April 29, 2002, Defendant Magoffin County Deputy Sheriff Paul Bayes responded to a 911 call regarding a possible drug overdose[1] at the residence of Tammy Howard ("Howard"). When Bayes arrived, Howard, her then-boyfriend Gerald Williams, and up to four emergency medical technicians ("EMTs") were inside the house. Bayes spoke with both Howard and Williams individually. Howard advised Bayes that there had not been any violence. Williams also told Bayes that "there wasn't nothing [sic] going on," but that he was concerned that Howard had taken some pills.

Howard apparently exhibited no physical signs of recent abuse. Bayes saw no signs of injury. Two of the EMTs stated in separate affidavits that "[o]ther than a little mark under Ms. Howard's eye there was no visible bruising or marks indicating any injury. There were no visible signs of any immediate or recent injuries or abuse. The mark under her eye appeared to have been present for several days." In their opinion, "there were no indications that there had been any fighting at the residence that evening and Ms. Howard did not complain of any fighting." According to one of the EMTs, Howard even appeared "happy."

Deputy Sheriff Carl Adams ("Deputy Adams"), who arrived at the scene after Bayes was already there, likewise testified[2] that he did not observe any physical injuries on Howard. He further testified that, through his experience in domestic violence cases, he would expect to see "red marks or some indicators" of violence if a person were being abused. However, he saw no "red marks or swelling or bleeding on . . . Howard" that night. Finally, Deputy Adams said that Howard never complained of any injury nor reported an assault.

According to all who saw her that night, Howard had obviously been drinking. She was, however, in the opinion of two EMTs, "in a state of consciousness and . . . was alert to person, place, [and] time." She ultimately refused treatment and signed a refusal-of-treatment form. The sheriffs and EMTs then left the residence.

The next morning, an ambulance was again called to Howard's residence. This time, however, Howard had to be taken to the hospital immediately. The record is unclear on this point, but it seems Howard had been physically beaten and was unconscious when the ambulance arrived. She died in the hospital several days later. Williams was convicted of Howard's murder on March 3, 2004 in Magoffin Circuit Court.

Plaintiff is Howard's father and the administrator of her estate. He brought a § 1983 claim against Bayes for violations of Howard's civil rights under the Fourth and Fourteenth Amendments. Specifically, Plaintiff argues that Bayes breached his duty under Kentucky law to arrest Williams the night before Williams killed Howard, which violated Howard's procedural due process rights. Plaintiff also brought a state law wrongful death action against Bayes. Plaintiff brought suit against Magoffin County Sheriff Pat Montgomery for negligent supervision and training under Kentucky state law. Finally, Plaintiff brought suit against the Magoffin County Fiscal Court as Bayes' employer.[3]

---

[1] The record is unclear as to who placed the call and whether the possible overdose was of alcohol or some other drug.

[2] Deputy Adams' testimony comes from the criminal trial against Williams.

[3] It is unclear from the complaint whether Plaintiff also seeks relief against Sheriff Montgomery and Magoffin County on the federal civil rights claim. For the reasons given below, however, this ambiguity is immaterial, as Plaintiff has failed to establish a constitutional violation.

Defendants filed a motion for summary judgment on all claims, alleging, inter alia, sovereign and qualified immunities. The district court granted Defendants' summary judgment on all claims and dismissed the case. *See Howard v. Bayes*, 378 F. Supp. 2d 753 (E.D. Ky. 2005). Plaintiff filed this timely appeal.

**II.**

There are two issues on appeal: (1) whether the district court erred in granting Defendants' motion for summary judgment on Plaintiff's civil rights claim; and (2) whether the district court erred in granting Defendants' motion for summary judgment on Plaintiff's wrongful death claim.

This Court reviews a grant of summary judgment de novo. *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). This Court must view all facts and inferences drawn therefrom in the light most favorable to the non-moving party, but uphold the grant of summary judgment "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**A.**

The first issue is whether Plaintiff can survive summary judgment on his § 1983 claim. Plaintiff argues that Howard had a procedural due process right under Kentucky law to have Williams arrested the night before her murder. Had this right not been violated, Plaintiff continues, Howard would not have been killed.

Section 1983 creates a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." A violation of procedural due process with respect to property interests created under state law, if established, may form the basis of a § 1983 action. *See Zinermon v. Burch*, 494 U.S. 113, 125-26 & n.11 (1990).

In support of their motion for summary judgment, Defendants alleged, inter alia, qualified immunity from suit. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), and is "'an *immunity from suit* rather than a mere defense to liability,'" *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam) (quoting *Mitchell*, 472 U.S. at 526). The Supreme Court has created a two-step process for analyzing claims of qualified immunity. First, the court must determine whether a constitutional violation has occurred. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a constitutional violation has occurred, then the court determines whether it was clearly established at the time of the violation that the conduct was unconstitutional. *Id.* If the court determines that it was clearly established, the defendant is not entitled to qualified immunity. Once raised, the plaintiff bears the burden of proving that the defendant is not entitled to qualified immunity. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006).

Plaintiff relies on two Kentucky statutes to support his claim that Howard had a procedural due process right to have Williams arrested the night before Williams killed her. First, he cites Ky. Rev. Stat. § 403.785(2) [hereinafter "KRS"], which states:

> When a law enforcement officer has reason to suspect that a family member, member of an unmarried couple, or household member has been the victim of domestic violence and abuse, the officer shall use all reasonable means to prevent further abuse, including but not limited to:

(a) Remaining at the location of the domestic violence and abuse so long as the officer reasonably suspects there is danger to the physical safety of individuals present without the presence of a law enforcement officer;

(b) Assisting the victim of domestic violence and abuse in obtaining medical treatment, including transporting the victim to the nearest medical facility capable of providing the necessary treatment; and

(c) Advising the victim immediately of the rights available to them [sic], including the provisions of KRS 403.715 to 403.785.[4]

Second, he cites KRS § 431.005(4), which states:

If a law enforcement officer has probable cause to believe that a person has violated a condition of release imposed in accordance with KRS 431.064 and verifies that the alleged violator has notice of the conditions, the officer shall, without a warrant, arrest the alleged violator whether the violation was committed in or outside the presence of the officer.

Plaintiff argues that the language "shall use all reasonable means to prevent further abuse," and "shall . . . arrest" if the "officer has probable cause to believe that a person has violated a condition of release," creates "a mandatory duty to protect those involved." Citing *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454 (1989), Plaintiff argues this "mandate" in turn creates an entitlement that rises to the level of a protected property interest under the Due Process Clause. *See id.* at 463 ("[T]he use of explicitly mandatory language, in connection with the establishment of specified substantive predicates to limit discretion, forces a conclusion that the State has created a liberty interest.") (quotations omitted); *see also Hewitt v. Helms*, 459 U.S. 460, 472 (1983) ("[T]he repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest.").

The Supreme Court's recent opinion in *Town of Castle Rock, Colorado v. Gonzales*, 125 S. Ct. 2796 (2005), is the starting point for analyzing a claimed procedural due process right to police protection.[5] In that case, Gonzales' husband violated the terms of a restraining order issued against him by kidnaping his children from Gonzales' home. *Id.* at 2800-01. Gonzales notified authorities that her children had been kidnaped by her husband in violation of his restraining order and even showed police a copy of the restraining order. *Id.* at 2801. Over the course of the next ten hours, Gonzales pleaded with police to search for him, but, she alleged, they did nothing. *Id.* at 2801-02. Eventually, Gonzales' husband arrived at the police station, opened fire, and was killed. *Id.* at 2802. The bodies of Gonzales' children were found in the cab of his pickup truck, already dead. *Id.*

---

[4] This section is to be interpreted to effectuate the following (relevant) legislative purpose: "[t]o allow persons who are victims of domestic violence and abuse to obtain effective, short-term protection against further violence and abuse in order that their lives will be as secure and as uninterrupted as possible." KRS § 403.715(1).

[5] Plaintiff, having written his final proof brief before the Supreme Court's decision, relies heavily on the en banc opinion of the Tenth Circuit for the proposition that a victim of abuse may possess a protected property interest in the enforcement of certain domestic violence regulations. *Gonzales v. City of Castle Rock*, 366 F.3d 1093, 1101 (10th Cir. 2004) (en banc), *rev'd*, 125 S. Ct. 2796 (2005). In his reply brief, Plaintiff argues that the Supreme Court's decision is distinguishable on the facts.

Similarly, the district court did not have the benefit of the Supreme Court's decision in *Castle Rock* when it rendered judgment in this case.

Gonzales brought a § 1983 action against the town of Castle Rock, claiming, inter alia, that the town violated her procedural due process rights when police officers "failed to respond properly to her repeated reports that her . . . husband was violating the terms of a restraining order." *Id.* at 2800.

Justice Scalia, writing for the majority, began the analysis by noting that the Court's "cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Id.* at 2803. He further emphasized that federal constitutional law determines whether a state-created interest rises to the level of an entitlement protected by due process. *Id.* at 2803-04. The issue of state law is relevant only to the issue of whether the state gave Gonzales a right to enforcement of the restraining order. *Id.* at 2804.

The Court found that the "critical language" came from the notice that appeared on the back of the restraining order. *Id.* at 2804-05. The notice provided, in part:

> "(a) . . . A peace officer shall use every reasonable means to enforce a restraining order.
>
> (b) A peace officer shall arrest, or, if an arrest would be impractical under the circumstances, seek a warrant for the arrest of a restrained person when the peace officer has information amounting to probable cause that:
>
> (I) The restrained person has violated or attempted to violate any provision of a restraining order; and
>
> (II) The restrained person has been properly served with a copy of the restraining order or the restrained person has received actual notice of the existence and substance of such order."

*Id.* at 2805 (emphasis removed) (quoting Colo. Rev. Stat. § 18-6-803.5(3)). The Court "[did] not believe that these provisions of Colorado law truly made enforcement of restraining orders *mandatory*[, because a] well established tradition of police discretion has long coexisted with apparently mandatory arrest statutes."[6] *Id.* at 2805-06.

The majority "rejected out of hand the possibility that 'the mandatory language . . . afford[ed] the police *no* discretion.' It is . . . simply 'common sense that *all* police officers must use some discretion in deciding when and where to enforce city ordinances.'" *Id.* at 2806 (alteration in original) (quoting *Chicago v. Morales*, 527 U.S. 41, 62 n.32 (1999)). The Court concluded that "a true mandate of police action would require some stronger indication from the . . . [l]egislature than 'shall use every reasonable means to enforce a restraining order' (or even 'shall arrest . . . or . . . seek a warrant')." *Id.* (quoting Colo. Rev. Stat. § 18-6-803.5(3)(a), (b)).

However, the Court continued, even if the statute were mandatory, Gonzales would not be entitled to the enforcement of that mandate. *Id.* at 2808-09. "If she was given a statutory

---

[6]Writing for himself and Justice Ginsburg in dissent, Justice Stevens argued that the language in the restraining order left police with no discretion whether to arrest. In support, he cited an article from the Institute for Law and Justice that stated that Colorado, in enacting the legislation at issue, joined fifteen states in mandating arrest for domestic violence offenses. *See id.* at 2817-18 (Stevens, J., dissenting) (citing Neal Miller, Institute for Law and Justice, *A Law Enforcement and Prosecution Perspective* 7-8 & nn.74, 90 (2003), http://www.ilj.org/dv/dvvawa2000.htm (as visited June 24, 2005)). A more recent article by the same author continues to list Colorado among those states mandating arrest but lists Kentucky among those granting purely discretionary authority to arrest. *See* Neal Miller, Institute for Law and Justice, *Domestic Violence: A Review of State Legislation Defining Police and Prosecution Duties and Powers* 27-28 & nn.85-86 (2004), http://www.ilj.org/publications/DV_Legislation-3.pdf (last visited July 11, 2006).

entitlement [not given contractually or at common law], we would expect to see some indication of that in the statute itself." *Id.* at 2808. *"The creation of a personal entitlement to something as vague and novel as enforcement of restraining orders cannot 'simply g[o] without saying.'" Id.* at 2809 (emphasis added) (alteration in original) (quoting *id.* at 2821 n.16 (Stevens, J., dissenting)). Because the statute was silent as to a private right of enforcement, the Court concluded that Colorado had not created such a right. *Id.*

Furthermore, the majority continued, even assuming Colorado had granted an entitlement, it did not rise to the level of a "property interest" for purposes of due process. *Id.* at 2809-10. The Court's prior "property-as-entitlement" cases have all implicitly required the entitlement to have some monetary value to the entitlement-holder in order to constitute a property interest. *Id.* at 2809. Of particular importance was that Gonzales' alleged property interest arose "*incidentally*, not out of some new species of government benefit or service, but out of a function that government actors have always performed–to wit, arresting people who they have probable cause to believe have committed a criminal offense." *Id.*

The majority also found the indirect nature of the governmental benefit "fatal" to Gonzales' claim. *Id.* at 2810. In *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773 (1980), the Supreme Court held that Medicaid patients had no due process rights in the revocation of government-enforced "minimum standards of care" for nursing homes, because the patients were merely indirect beneficiaries of the governmental regulations. *Castle Rock*, 125 S. Ct. at 2810 (quoting *O'Bannon*, 447 U.S. at 787).

> "[A]n indirect and incidental result of the Government's enforcement action . . . does not amount to a deprivation of any interest in life, liberty, or property." In this case, as in *O'Bannon*, "[t]he simple distinction between government action that directly affects a citizen's legal rights . . . and action that is directed against a third party and affects the citizen only indirectly or incidentally, provides a sufficient answer to" [Gonzales'] reliance on cases that found government-provided services to be entitlements.

*Id.* (first and second alterations in original) (quoting *O'Bannon*, 447 U.S. at 787-88).

Finally, the Court stated that

> *the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause*, neither in its procedural nor in its "substantive" manifestations. This result reflects our continuing reluctance to treat the Fourteenth Amendment as "'a font of tort law'" . . . . [T]he framers of the Fourteenth Amendment and the Civil Rights Act of 1871, 17 Stat. 13 (the original source of § 1983), did not create a system by which police departments are generally held financially accountable for crimes that better policing might have prevented . . . .

*Id.* (emphasis added) (quoting *Parratt v. Taylor*, 451 U.S. 527, 544 (1981)). Having concluded that Gonzales did not have a protected property interest in the enforcement of the restraining order, the Court reversed the en banc decision of the Tenth Circuit denying Castle Rock qualified immunity. *Id.* at 2810-11.

In the instant case, Plaintiff argues that Howard's procedural due process rights were violated when sheriff's deputies failed to arrest Williams the night before he killed Howard. The first statute Plaintiff relies on to support his claim does not contain "mandatory language" as that term was used in *Castle Rock*. KRS § 403.785(2) states that "[w]hen a law enforcement officer has reason to suspect that [someone] has been the victim of domestic violence and abuse, the officer shall use all

reasonable means to prevent further abuse, including but not limited to" three listed options. However, requiring that law enforcement "use every reasonable means, up to and including arrest," *Castle Rock*, 125 S. Ct. at 2807 (internal quotation omitted), is insufficient, because "[s]uch indeterminacy is not the hallmark of a duty that is mandatory. [One cannot] be safely deemed 'entitled' to something when the identity of the alleged entitlement is vague." *Id.*; *see also id.* at 2806 ("[A] true mandate of police action would require some stronger indication from the . . . [l]egislature than 'shall use every reasonable means to enforce a restraining order' (or even 'shall arrest . . . or . . . seek a warrant')." (quoting Colo. Rev. Stat. § 18-6-803.5(3)(a), (b))). KRS § 403.785 uses precisely the type of indeterminate and vague language that does not confer an entitlement. Further, the express legislative purpose for the statute makes no mention of a requirement or mandate. *See* KRS § 403.715. Because the statute contains no express language to the contrary, we must presume that the statute grants discretionary authority to arrest. *See Castle Rock*, 125 S. Ct. at 2806 (quoting *Morales*, 527 U.S. at 62 n.32). Therefore, this statute cannot be considered mandatory for purposes of creating a protected property interest under the Due Process Clause.

Moreover, of the three means to prevent further abuse expressed in the statute, none even involves the arrest of violators. In other words, even assuming this statute did grant Howard some entitlement, it would not have included an entitlement to have the police arrest Williams.

The other statute Plaintiff cites is not materially different from the language found in the restraining order in *Castle Rock*. *Compare* KRS § 431.005(4) ("If a law enforcement officer has probable cause to believe that a person has violated a condition of release . . . and verifies that the alleged violator has notice of the conditions, the officer shall, without a warrant, arrest the alleged violator . . . ."), *with Castle Rock*, 125 S. Ct. at 2805 ("'A peace officer shall arrest . . . when the peace officer has . . . probable cause that [t]he restrained person has violated . . . any provision of a restraining order; and [t]he restrained person has been properly served with a copy of the restraining order or the restrained person has received actual notice of the existence and substance of such order.'" (emphasis removed) (quoting Colo. Rev. Stat. § 18-6-803.5(3))). And as was the case in *Castle Rock*, neither the state legislature nor judiciary has affirmatively indicated that the statutes at issue confer an entitlement or property interest on victims of domestic abuse. Thus, we are left to conclude that the state neither intended to grant, nor did grant, such an entitlement. *See Castle Rock*, 125 S. Ct. at 2808 (noting that the Colorado legislature would likely have given some indication of an intent to grant a statutory entitlement if one were so intended); *id.* at 2809 ("The creation of a personal entitlement to something as vague and novel as enforcement of restraining orders cannot 'simply g[o] without saying.'" (alteration in original) (quoting *id.* at 2821 n.16 (Stevens, J., dissenting))).

Finally, like the claims in *Castle Rock* and *O'Bannon*, Plaintiff's claim here is based merely on an indirect benefit arising from a state enforcement scheme. *See id.* at 2810; *O'Bannon*, 447 U.S. at 787. The Kentucky statutes address law enforcement's response to domestic violence. They authorize police to take discretionary action against those suspected of physically abusing family members. Any resulting benefit to the victims, and society at large, is indirect. The incidental nature of this alleged property interest is fatal to Plaintiff's claim. *See Castle Rock*, 125 S. Ct. at 2810.

In light of the Supreme Court's decision in *Castle Rock*, we conclude that the district court did not err in finding that Plaintiff failed to demonstrate that a constitutional violation had occurred. Thus, the district court properly granted Defendants qualified immunity.[7]

---

[7] Because none of the individual officers violated Howard's constitutional rights, the claim against Magoffin County fails as a matter of law. *See Tanner v. County of Lenawee*, 452 F.3d 472, 481-82 (6th Cir. 2006); *Scott v. Clay County, Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000).

**B.**

The second issue is whether Plaintiff can survive summary judgment on his wrongful death claim under Kentucky state law.[8] Under Kentucky law, there is generally no duty owing from the police to a citizen to protect from harm or injury. *See City of Florence, Ky. v. Chipman*, 38 S.W.3d 387, 392 (Ky. 2001). A negligence claim against state officials for failure to protect is available only where (1) the victim was in state custody or otherwise restrained by the state at the time of injury, and (2) the injurious conduct was committed by a state actor. *Id.* Plaintiff has not even *alleged* the fact of either circumstance, although both are required. Needless to say, he has also failed to provide evidence sufficient to survive summary judgment on the issue. Thus, Defendants were entitled to summary judgment.[9]

**III.**

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

---

[8] Remarkably, Plaintiff argues that *Castle Rock* requires that all state law claims must survive summary judgment and be heard by a jury, even if a federal claim under § 1983 fails. He relies on the following passage in support: "Although . . . the Fourteenth Amendment and . . . § 1983 [do] not create a system by which police departments are generally held financially accountable for crimes that better policing may have prevented, the people of Colorado are free to craft such a system under state law." *Castle Rock*, 125 S. Ct. at 2810 (citation omitted). As an initial matter, the Court's statement concluded its discussion of Gonzales' *federal* claim. In fact, the Court never even addressed her state law claims. Furthermore, we disagree that with one sentence the Supreme Court reversed the long-standing and well-established rule of federal civil procedure that a court may grant summary judgment on a state law claim where the plaintiff wholly fails to establish that claim under state law. Such a radical departure "cannot simply go without saying." *Id.* at 2809 (alteration removed) (quotation omitted).

[9] Magoffin County is also entitled to sovereign immunity, as Kentucky subdivisions are not liable for the tortious performance of governmental functions, nor vicariously liable for the negligence of their employees. *See Grayson County Bd. of Educ. v. Casey*, 157 S.W.3d 201, 202-03 (Ky. 2005); *Franklin County, Ky. v. Malone*, 957 S.W.2d 195, 201 (Ky. 1997), *overruled in part on other grounds by Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001).