*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0039p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JUSTIN HUDSON, Surviving Child of JENNIFER
BRADDOCK, Deceased, by his next friend (Guardian)
Pamela Davis; PAMELA DAVIS,
                            *Plaintiffs-Appellees,*

     *v.*

SUSAN HUDSON, et al.,
                            *Defendants,*

MEMPHIS POLICE OFFICER OWEN, #6420,
individually; MEMPHIS POLICE OFFICER MORRIS,
#1866, individually,
                            *Defendants-Appellants.*

No. 05-6575

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 04-02662—Bernice B. Donald, District Judge.

Argued: November 29, 2006

Decided and Filed: January 26, 2007

Before: BOGGS, Chief Judge; COOK, Circuit Judge; ROSE, District Judge.[*]

---

## COUNSEL

**ARGUED:** Mary Elizabeth McKinney, GODWIN, MORRIS, LAURENZI & BLOOMFIELD, Memphis, Tennessee, for Appellants. William T. Winchester, THE LAW OFFICES OF WILLIAM T. WINCHESTER, Memphis, Tennessee, for Appellees. **ON BRIEF:** Mary Elizabeth McKinney, Deborah E. Godwin, GODWIN, MORRIS, LAURENZI & BLOOMFIELD, Memphis, Tennessee, for Appellants. William T. Winchester, THE LAW OFFICES OF WILLIAM T. WINCHESTER, Memphis, Tennessee, for Appellees.

---

[*]The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

---

**OPINION**

---

COOK, Circuit Judge.  Defendants, two Memphis police officers, appeal the district court's denial of qualified immunity from the claims against them by Plaintiffs Justin Hudson and Pamela Davis for violating Jennifer Braddock's Fourteenth Amendment right to due process of law.  We reverse and hold that these defendants are entitled to qualified immunity.

I

Because this appeal comes to us on a motion to dismiss, we construe the complaint liberally in the plaintiffs' favor and accept all its factual allegations and inferences as true.  *See Shepherd v. Wellman*, 313 F.3d 963, 967 (6th Cir. 2002).  First, we briefly recount the tragedy that led to this lawsuit.  Jennifer Braddock was issued three protective orders against James Hudson, the father of her son, because Hudson repeatedly abused Braddock.  In August 2001, while the third protective order was in effect, Hudson broke into Braddock's home and threatened her.  She called the Memphis Police Department, but it made no attempt to find him.  Hudson eventually was convicted of aggravated criminal trespass, vandalism, and violating the protective order, and sentenced to one week in jail.  Over the next two years, Braddock called the police several times to complain about various violations of the protective order, including acts of physical violence, but the Memphis Police took no action.  Braddock's struggle against Hudson's violence ended when Hudson broke into her home, killed her and two of her friends, then turned the gun on himself and committed suicide.

Justin Hudson, Braddock's son with Hudson, and Pamela Davis, Braddock's mother and Justin's guardian, sued James's sister Susan Hudson, who drove James Hudson to Braddock's house on the day of the shooting, the Memphis Police Department, and a number of Memphis Police Officers for violating the Fourteenth Amendment and various state-law rights.  Two of the officers moved to dismiss the constitutional claims against them, arguing that they were entitled to qualified immunity.  The district court denied their motion, holding that qualified immunity was not available to them because their actions were not discretionary under Tennessee law.  They properly commenced this interlocutory appeal.

II

While the denial of a motion to dismiss is an interlocutory order generally not appealable, we recognize an exception to this general rule when a qualified immunity defense is denied.  *Phelps v. Coy*, 286 F.3d 295, 298 (6th Cir. 2002); *Johnson v. Jones*, 515 U.S. 304, 311-12 (1995).  We recognize this exception to ensure officers entitled to qualified immunity are in fact immunized from suit, a benefit that would be lost if an officer were erroneously required to proceed to trial.  *See Johnson*, 515 U.S. at 312.

We review de novo the application of qualified immunity to a particular defendant.  *Swiecicki v. Delgado*, 463 F.3d 489, 497 (6th Cir. 2006).  When reviewing a district court's denial of a motion to dismiss, we reverse "only if it is clear that no violation of a clearly established right could be found under any set of facts that could be proven consistent with the allegations or pleadings."  *Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005).

III

Examining first whether qualified immunity is a defense available to these officers, we acknowledge that it shields "government officials performing discretionary functions" from civil

liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Davis v. Holly*, 835 F.2d 1175, 1178 (6th Cir. 1987). The district court, citing to *Matthews v. Pickett County*, 996 S.W.2d 162, 164 (Tenn. 1999), for the proposition that arresting Hudson was not discretionary under Tennessee law, held that qualified immunity was unavailable to these officers. We disagree because *Matthews*, which concerned governmental tort immunity under *Tennessee* law, does not control our analysis of whether the *federal* defense of qualified immunity is available to officers sued under 42 U.S.C. § 1983 for violating a *federal* right.

Officials generally may assert a qualified immunity defense in all but the narrow class of circumstances in which they perform "ministerial" functions where the relevant law "specif[ies] the precise action that the official must take in each instance," thereby eliminating discretion. *Davis v. Scherer*, 468 U.S. 183, 196 n.14 (1984); *see also Sellers ex rel. Sellers v. Baer*, 28 F.3d 895, 902 (8th Cir. 1994). As long as the official's authority is discretionary, it remains so "however egregiously it is abused." *Davis*, 468 U.S. at 196 n.14. In denying qualified immunity, the district court focused on the compulsory verb "shall" in the Tennessee statute: "any law enforcement officer shall arrest [the 'respondent' of a protective order] without a warrant if [the] officer has reasonable cause to believe [the respondent] has violated or is in violation of an order for protection." Tenn. Code Ann. § 36-3-611(a).

But seemingly mandatory statutes, such as this one, and police discretion coexist frequently. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, ___, 125 S. Ct. 2796, 2806 (2005) (citing *City of Chicago v. Morales*, 527 U.S. 41, 62 (1999)). Although calling for mandatory arrests ("shall"), the statute also requires the police officer to have "reasonable cause" to arrest,[1] which requires a police officer to exercise at least some discretion. The statute certainly does not specify the precise action the officer must take when enforcing each and every protective order. Because police officers retain some discretion when enforcing protective orders under the Tennessee statute, we hold that the appellants may avail themselves of the qualified immunity defense.

IV

A

Having determined that qualified immunity is available to these officers, we next consider whether they are entitled to it. We engage in the well-established two-step inquiry specified in *Saucier v. Katz*, 533 U.S. 194, 200 (2001), to decide first whether the defendant's conduct violated a federal right held by the plaintiff, *id.*, and second whether that right was clearly established at the time of the violation. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

Plaintiffs' counsel declined our invitation at oral argument to clarify whether his clients' claims are grounded in substantive or procedural due process. Regardless, we hold that the appellants are entitled to qualified immunity from suit under either theory.

B

As a general principle, state actors cannot be held liable for private acts of violence under a substantive due process theory. *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989); *see also Castle Rock*, 545 U.S. at ___, 125 S. Ct. at 2810. We recognize two exceptions to this rule: (1) when the state has a special relationship to the victim, and (2) when the state creates the danger that led to the victim's harm. *Jones v. Union County*, 296 F.3d 417, 428 (6th

---

[1] Indeed, it would be difficult for us to square the Tennessee statute with the Fourth Amendment if it allowed for arrests without probable cause.

Cir. 2002).  In *Jones*, the plaintiff claimed that Union County, Tennessee, violated her substantive due process rights when it failed to serve a protective order on her ex-husband, who later attacked her.  We held that "the Tennessee Legislature's imposition of affirmative duties upon state officials to serve *ex parte* orders of protection timely does not give rise to a due process claim cognizable under § 1983 based upon a special relationship between Union County and Plaintiff." *Id.*  Similarly, we hold that a protection order does not create a special relationship between police officers and the individual who petitioned for that order.

Nor may the plaintiffs establish their claims under the state-created-danger theory.  Under this theory, a plaintiff must show "an affirmative act that creates or increases the risk, a special danger to the victim as distinguished from the public at large, and the requisite degree of state culpability." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 464 (6th Cir. 2006) (citing *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066-67 (6th Cir. 1998)).  These officers' alleged inaction fails to satisfy the "affirmative act" requirement necessary to establish a state-created-danger substantive due process claim.  We need not examine the remaining *Kallstrom* elements to conclude that these officers did not violate the Fourteenth Amendment, and we hold that they are entitled to qualified immunity to the extent the plaintiffs' claims are based on such a theory.

C

To establish a procedural due process claim, a plaintiff must show that she had a property interest of which she was deprived without due process of law.  U.S. Const. amend. XIV.  We must determine "whether what [Tennessee] law has given [Braddock] constitutes a property interest for purposes of the Fourteenth Amendment." *Castle Rock*, 545 U.S. at ___, 125 S. Ct. at 2803.  We first determine whether Tennessee has created a property interest under its law, *see Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972), and then decide whether that interest is protected by the Fourteenth Amendment, an issue that "is ultimately one of federal constitutional law." *Castle Rock*, 545 U.S. at ___, 125 S. Ct. at 2803.  Mandatory enforcement of a protective order does not necessarily give a petitioner an entitlement to its enforcement, nor does it "resemble any traditional conception of property." *Id.* at ___, 125 S. Ct. at 2808-09.

We recently applied *Castle Rock* to the enforcement of a Kentucky statute, holding that its enforcement "cannot be considered mandatory for purposes of creating a protected property interest under the Due Process Clause." *Howard v. Bayes*, 457 F.3d 568, 576 (6th Cir. 2006).  Unlike the statute at issue in *Howard* that granted officers "purely discretionary authority to arrest," *id.* at 574 n.6, the Tennessee Supreme Court considers arrests under the statute at issue here "operational" as opposed to "discretionary." *Matthews*, 996 S.W.2d at 164-65.  As we noted, *supra*, this statute grants officers at least some discretion to determine "reasonable cause." Tenn. Code Ann. § 36-3-611(a).  While *Matthews* may have defined the arrests as "operational" to remove state immunity for a state-law negligence claim, it did not decide whether Tennessee law creates a property interest in the enforcement of protective orders.

Even if Tennessee law might be read to create some type of property interest, that interest must still rise to the level of a constitutionally protected interest under the Due Process Clause of the Fourteenth Amendment.  Braddock's interest in the enforcement of the protection order, specifically the arrest of Hudson, would arise incidentally "out of a function that government actors have always performed—to wit, arresting people who they have probable cause to believe have committed a criminal offense." *Castle Rock*, 545 U.S. at ___, 125 S. Ct. at 2809.  We share the Supreme Court's skepticism in *Castle Rock* that this type of entitlement could ever "constitute a 'property' interest for purposes of the Due Process Clause." *Id.*  Imbuing these restraining orders with constitutional property value, protected by the Due Process Clause, would needlessly interfere with Tennessee's choice of how to allocate the resources necessary to enforce its domestic violence

laws.  We thus hold that the enforcement of Tennessee protective orders does not create a property interest protected by the Due Process Clause of the Fourteenth Amendment.

D

The officers' failure to arrest Hudson offends neither the procedural nor substantive prongs of the Fourteenth Amendment's Due Process Clause.  Because we find no violation of a federal right, we need not proceed to the second *Saucier* step.  We hold that the appellants are entitled to qualified immunity from the plaintiffs' constitutional claims against them.

V

While this loss of life was undeniably tragic, these officers simply did not violate the United States Constitution by failing to prevent James Hudson from murdering Jennifer Braddock.  For the foregoing reasons, we reverse the district court's denial of the appellants' motion to dismiss and instruct it to grant that motion.