*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0097p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

CAREMARK, INC., a California Corporation,

*Plaintiff-Appellant,*

*v.*

No. 05-6903

DAVID GOETZ, in his official capacity as Commissioner of the Tennessee Department of Finance and Administration; JASON D. HICKEY, in his official capacity as Deputy Commissioner of the Bureau of TennCare,

*Defendants-Appellees,*

UNITED STATES OF AMERICA,

*Intervenor-Appellee.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 04-01112—Todd J. Campbell, District Judge.

Argued: October 24, 2006

Decided and Filed: March 13, 2007

Before: KEITH and COLE, Circuit Judges; STEEH, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Jennifer L. Weaver, WALLER, LANSDEN, DORTCH & DAVIS, Nashville, Tennessee, for Appellant. Peter M. Coughlan, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees. Tara Leigh Grove, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor. **ON BRIEF:** Jennifer L. Weaver, Paul S. Davidson, WALLER, LANSDEN, DORTCH & DAVIS, Nashville, Tennessee, for Appellant. Peter M. Coughlan, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees. William Kanter, Anne Murphy, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor.

---

[*]The Honorable George Caram Steeh III, United States District Judge for the Eastern District of Michigan, sitting by designation.

---

**OPINION**

---

DAMON J. KEITH, Circuit Judge. Plaintiff-Appellant Caremark, Inc. ("Caremark") appeals the district court's judgment denying Caremark's motion for summary judgment and granting summary judgment in favor of Defendants-Appellees David Goetz and Jason D. Hickey, sued in their official capacities as Commissioner of the Tennessee Department of Finance and Administration, and Deputy Commissioner of the Bureau of TennCare ("TennCare"), respectively, (collectively "TennCare"); and Intervenor-Appellee the United States of America. Caremark specifically challenges the district court's declaration that the Bureau of TennCare's third-party claims for Medicaid reimbursement are not subject to certain "card presentation" and "timely filing" restrictions contained in the pharmacy-benefit plans administered by Caremark. For the reasons set forth below, we **AFFIRM** the district court's judgment.

**BACKGROUND**

**I. Factual Background**

Caremark is a pharmaceutical-services company that contracts with health-benefit plan providers to supply prescription drug distribution and claim processing to plan participants. In addition to operating its own mail-service pharmacies, Caremark has contracted with retail pharmacy chains and independent retail pharmacies to form a network of more than 57,000 retail pharmacies. TennCare is the state agency that provides health care coverage to individuals eligible for Medicaid benefits in Tennessee.

The Caremark-administered pharmacy benefit plans at issue contain two relevant plan limitations that impact the payment of claims: (1) the card presentation restriction and (2) the timely filing restriction.[1] When a plan has a card presentation restriction, Caremark will decline to provide any prescription drug benefits if the participant does not identify himself or herself as a Caremark plan participant at the time of sale. Identification as a plan participant is usually achieved by presenting a Caremark card.

Other Caremark plans allow participants to obtain their prescription drugs at retail pharmacies without identifying themselves as plan participants. Under such plans, the participant pays for the prescription drugs out-of-pocket and then seeks reimbursement from Caremark. These plans are subject to a timely filing requirement, whereby a participant who seeks reimbursement for the out-of-pocket expenditure must submit his or her request within a prescribed period of time. A plan may designate a filing period of any length, even a period as short as a few days.

Some Caremark pharmacy-plan participants are also eligible for Medicaid (so-called "dual eligibles").[2] In Tennessee, when a dual eligible purchases prescription drugs at a retail pharmacy and presents only his or her Medicaid card, the pharmacy sends a claim to TennCare. When

---

[1] The "out-of-network" restriction contained in certain Caremark-administered plans is not implicated in the present appeal. The present decision addresses only the narrow issue of whether Caremark's card presentation and timely filing restrictions, as applied to TennCare, can serve as permissible bases to deny TennCare's third-party reimbursement requests.

[2] In this case, the term "dual eligible" refers to persons with coverage under both Medicaid and a pharmacy-benefit plan administered by Caremark. The term does not signify persons eligible for both Medicaid and Medicare, as the term is often used in other contexts.

TennCare is unaware of any third-party liability (any other source of pharmacy-benefit coverage, such as Caremark coverage), it pays the claim for the Medicaid beneficiary. If, however, TennCare discovers that the beneficiary is also covered by a Caremark plan after a claim is paid, it submits a third-party reimbursement request to Caremark pursuant to 42 U.S.C. § 1396a(a)(25), a process called "pay and chase."

When TennCare seeks reimbursement for a dual eligible enrolled in a Caremark plan that has a card presentation requirement, Caremark will reject the reimbursement request on the grounds that a Caremark card was not presented at the point of sale. Similarly, when TennCare submits a reimbursement request for a dual eligible enrolled in a Caremark plan with a timely filing requirement, Caremark routinely denies TennCare's request as untimely. Since TennCare cannot file a claim for reimbursement until it receives a claim from the pharmacy and subsequently discovers that the beneficiary is also covered by Caremark, TennCare is often unable to file its claim for reimbursement within the time limit set by the Caremark plan.

## II.  Procedural Background

On December 13, 2004, Caremark filed an action against TennCare in the district court seeking a declaratory judgment that TennCare's third-party claims are subject to certain pharmacy-benefit plan restrictions (including the card presentation and timely filing restrictions) applicable to individual plan participants. The United States successfully moved to intervene in the case on March 7, 2005. On the same date, TennCare filed a counterclaim seeking a declaratory judgment (1) that Caremark has denied reimbursement to TennCare by improperly applying its card presentation and timely filing restrictions against TennCare, in violation of the Medicaid statute, 42 U.S.C. § 1396, *et seq.* and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1169(b).

On July 8, 2005, TennCare, Caremark, and the United States filed cross-motions for summary judgment. On October 18, 2005, the district court granted TennCare's and the United States's motions for summary judgment and denied Caremark's motion for summary judgment. *Caremark, Inc. v. Goetz*, 395 F. Supp. 2d 683 (M.D. Tenn. 2005). Specifically, the district court found that a Tennessee Medicaid beneficiary's statutory assignment of rights to TennCare occurs at the time the beneficiary requests covered goods or services, and thus the card presentation and timely filing restrictions set forth in Caremark-administered pharmacy-benefit plans do not apply to TennCare's requests for reimbursement from Caremark. *Id*. at 695-96. The present appeal ensued.

## STANDARD OF REVIEW

"This Court reviews a grant of summary judgment de novo." *Howard ex rel. Estate of Howard v. Bayes*, 457 F.3d 568, 571 (6th Cir. 2006). Because the denial of Caremark's motion for summary judgment was "decided on purely legal grounds," we also review that decision de novo. *Citizens Ins. Co. of Am. v. MidMichigan Health ConnectCare Network Plan*, 449 F.3d 688, 691 (6th Cir. 2006). Moreover, statutory interpretation questions are reviewed de novo. *Cmtys. for Equity v. Michigan High School Athletic Ass'n*, 459 F.3d 676, 680 (6th Cir. 2006) (citing *Ammex, Inc. v. United States*, 367 F.3d 530, 533 (6th Cir. 2004)).

## ANALYSIS

Medicaid is a program, created in 1965 under Title XIX of the Social Security Act, that pays for medical and health-related assistance for certain low-income individuals and families. *See* 42 U.S.C. § 1396, *et seq*. Medicaid is a joint federal and state program, which is administered by the states but financed with both state and federal funds. 42 U.S.C. § 1396a(b). Unless otherwise provided by federal law, Medicaid is considered to be the payor of last resort. *See Wesley Health*

*Care Ctr., Inc. v. DeBuono*, 244 F.3d 280, 281 (2d Cir. 2001); S. Rep. No. 99-146, 280, 99th Cong., 1st Sess. 312 (Oct. 2, 1985). This means that all other available resources must be used before Medicaid pays for the medical care of an individual enrolled in a Medicaid program. Thus, when a dual eligible purchases prescription drugs, Caremark is the primary payor and TennCare is only a secondary payor.

Federal law requires every state participating in a Medicaid program to implement a "third party liability" provision that requires the state to seek reimbursement for Medicaid expenditures from third parties who are liable for medical treatment provided to a Medicaid recipient. 42 U.S.C. § 1396a(a)(25)(A). A state plan also must provide that, as a prerequisite to Medicaid eligibility, the applicant must assign to the state whatever rights he or she may have to payment for pharmaceutical costs paid by the state plan on behalf of dual eligibles. 42 U.S.C. § 1396k(a)(1)(A); 42 C.F.R. § 433.145(a). Federal law further requires group health plans to "provide that payment for benefits with respect to a participant under the plan will be made in accordance with any assignment of rights made by or on behalf of such participant or beneficiary of the participant[.]" 29 U.S.C. § 1169(b)(1).

In accordance with the aforementioned federal law, Tennessee law provides that "the state shall be subrogated to all rights of recovery" that Medicaid recipients may have against any third parties, Tenn. Code Ann. § 71-5-117(a) (2003), and that "[u]pon accepting medical assistance, the recipient shall be deemed to have made an assignment to the state of the right of third party insurance benefits to which the recipient may be entitled." *Id*. § 71-5-117(b). Tennessee's regulations provide that claims should not be made against Medicaid until "other probable third party resources to the recipient have been collected[.]" Tenn. Comp. R. & Regs. § 1200-13-1-.04(2) (2002). Tennessee regulations specifically authorize the state's Medicaid agency, TennCare, to seek reimbursement from third parties, such as Caremark, by means of "direct billing when it is determined that a previously paid service(s) [sic] may have been covered by a third party." *Id*. § 1200-13-1-.04(6)(a).

The central issue presented on appeal is whether the card presentation and timely filing limitations contained in the Caremark-administered pharmacy-benefit plans can serve as permissible bases for Caremark to deny reimbursement claims submitted by TennCare for Medicaid payments made on behalf of dual eligibles. Caremark argues on appeal that the district court erred in holding that TennCare's third-party claims are not subject to the card presentation and timely filing restrictions for three reasons: (1) a Medicaid recipient does not assign his or her rights to TennCare until TennCare makes a payment for the recipient's prescription drugs; (2) the district court impermissibly granted the assignee TennCare greater rights than the assignor plan participant; and (3) the district court's ruling runs afoul of ERISA.

Ultimately, we find these arguments to be unconvincing for four reasons. First, 42 U.S.C. § 1396a(a)(25)(I) and its legislative history establish that the card presentation and timely filing restrictions are impermissible grounds on which to deny reimbursement to a state Medicaid agency like TennCare. Second, the district court did not err in holding that a Tennessee Medicaid beneficiary's assignment of rights to TennCare occurs at the point-of-sale. Third, the card presentation and timely filing restrictions are invalid as applied because they violate Medicaid's anti-discrimination policies. Fourth, contrary to Caremark's contention, ERISA actually requires health benefit plans such as Caremark to allow state Medicaid agencies to obtain reimbursement for Medicaid expenditures. We discuss each of Caremark's arguments and our bases for rejecting those arguments, in succession, below.

## I.

On February 8, 2006, federal legislation went into effect that states that Medicaid reimbursement claims cannot be denied for violations of the type of card presentation or timely

filing restrictions contained in the Caremark-administered plans. Specifically, 42 U.S.C. § 1396a(a)(25)(I) provides in relevant part:

> [States shall] effect laws requiring health insurers . . . (iv) [to] agree not to deny a claim submitted by the State solely on the basis of the date of submission of the claim, the type or format of the claim form, or a failure to present proper documentation at the point-of-sale that is the basis of the claim, if — (I) the claim is submitted by the State within the 3-year period beginning on the date on which the item or service was furnished; and (II) any action by the State to enforce its rights with respect to such claim is commenced within 6 years of the State's submission of such claim . . . .

42 U.S.C. § 1396a(a)(25)(I). Caremark argues that these amendments to the statute demonstrate that "Medicaid third party claims were not exempt from card presentation requirements and timely filing limits under the prior version of the statute." (Appellant letter submitted pursuant to Fed. R. App. P. 28(j) (Oct. 6, 2006)). The United States, in turn, argues that the amendments do not constitute new limitations, but simply clarify previously existing law. We are persuaded by the United States's argument.

While the statutory language of 42 U.S.C. § 1396a itself does not indicate whether the amendments are intended to impose new obligations or clarify preexisting law, the legislative history provides insight. The provisions requiring states to enact laws mandating that private insurers not deny Medicaid reimbursement claims "on the basis of the date of submission of the claim, the type or format of the claim form, or a failure to present proper documentation at the point-of-sale" were originally contained in section 6035 of the Deficit Reduction Act of 2005. *See* Pub. L. No. 109-171 § 6035, 120 Stat. 4 (2006). In amending section 1902(a)(25) of the Social Security Act, 42 U.S.C. § 1396a(a)(25), Congress chose to entitle this portion of the Deficit Reduction Act of 2005 "**CLARIFICATION** OF THIRD PARTIES RESPONSIBLE FOR PAYMENT OF A CLAIM FOR A HEALTH CARE ITEM OR SERVICE." *Id*. (emphasis added). The fact that Congress expressly decided to denominate these amendments as a "clarification" is significant. This designation, viewed against the backdrop of the well-established federal policy that Medicaid is the payor of last resort, leads us to conclude that the amendments now contained in 42 U.S.C. § 1396a(a)(25)(I)(iv) were clarifications of preexisting law. Thus, 42 U.S.C. § 1396a(a)(25)(I)(iv) establishes that, during the period in question, the card presentation and timely filing restrictions contained in the Caremark-administered pharmacy benefit plans were impermissible when applied to deny Medicaid reimbursement claims submitted by TennCare.

## II.

Caremark argues that the district court erred in finding that the statutory assignment of a Tennessee Medicaid beneficiary's rights to TennCare occurs at the point-of-sale, i.e. when the recipient purchases his or her prescription at the pharmacy. Caremark posits, instead, that the assignment of rights by the beneficiary to TennCare occurs when TennCare pays for the beneficiary's prescription drugs. The Tennessee welfare statute governing medical assistance provides in section 71-5-117(b) that "[u]pon accepting medical assistance, the recipient shall be deemed to have made an assignment to the state of the right of third party insurance benefits to which the recipient may be entitled." Tenn. Code Ann. § 71-5-117(b). In reaching its conclusion that assignment only occurs after payment, Caremark relies on the definition of "medical assistance," which is defined elsewhere in the Tennessee statute, as "payment of the cost of care, services, and supplies[.]" *Id.* § 71-5-103(5). Caremark reasons that, pursuant to this definition, a Medicaid recipient can only make an assignment to the state after the recipient accepts payment of the cost of the prescription. We reject this argument for four reasons.

First, such an interpretation of the Tennessee statute is inconsistent with federal law; and there is no indication that section 71-5-117(b), as written and applied, does not comply with federal law.  Section 71-5-117(b) was avowedly adopted to comply with 42 U.S.C. § 1396k(a)(1)(A) and 42 C.F.R. § 433.145.  42 U.S.C. § 1396k(a)(1) provides in relevant part:

> (a) For the purpose of assisting in the collection of medical support payments and other payments for medical care owed to recipients of medical assistance under the State plan approved under this subchapter, a State plan for medical assistance shall --
>
>> (1) provide that, as a condition of eligibility for medical assistance under the State plan to an individual who has the legal capacity to execute an assignment for himself, the individual is required ---
>>
>>> (A) to assign the State any rights, of the individual or of any other person who is eligible for medical assistance under this subchapter and on whose behalf the individual has the legal authority to execute an assignment of such rights, to support . . . and to payment for medical care from any third party[.]

42 U.S.C. § 1396(k)(a)(1).  Thus, an individual's assignment of rights to a state Medicaid agency (such as TennCare) is a prerequisite or "condition of eligibility" for medical assistance under Medicaid.  Because an assignment of an individual's rights is a precondition to Medicaid eligibility and the Medicaid agency will only pay for a prescription on behalf of an individual if the individual is eligible for Medicaid, the individual's assignment of rights must — by definition — occur before Medicaid makes a payment.  *See id.*  Hence, Caremark's interpretation of the Tennessee welfare statute (that assignment does not occur until after Medicaid pays for an individual's pharmacy products) is entirely incompatible with federal Medicaid mandates.

Second, Caremark misconstrues the language of section 71-5-117(b).  Essentially, Caremark asks the Court to read section 71-5-117(b) to mean that a recipient does not make an assignment of its rights to third-party insurance benefits until TennCare makes a payment for a pharmacy product on behalf of the recipient.  Even assuming that in this context "medical assistance" means payment of care, services, or supplies, we are unpersuaded by Caremark's interpretation.  Contrary to Caremark's assertion, the plain language of the statute does not provide that a recipient cannot assign his or her right until he or she accepts payment.  Rather, the statute states that "[u]pon accepting medical assistance, the recipient shall be deemed to have made an assignment."  Tenn. Code Ann. § 71-5-117(b).  The fact that upon accepting payment, a recipient "*shall be deemed to have made* an assignment" does not necessarily preclude the possibility that assignment occurred at the point-of-sale, or, for that matter, at another point in time prior to payment by TennCare.  *See id*.

Third, any lingering confusion about the language of section 71-5-117(b) is promptly put to rest by reading the statute's companion regulations.  These regulations explicitly define the nature of a Medicaid beneficiary's assignment of rights, which are mandated by both federal and Tennessee statutes.  The "Assignment of Benefits" section of the regulations explicitly provides that "[a] recipient assigns rights to Medicaid *when the recipient uses a Medicaid card* to receive medical assistance." Tenn. Comp. R. & Regs. § 1200-13-1-.04(11)(a) (2002) (emphasis added).  Thus, the Tennessee Medicaid regulations unequivocally spell out that assignment of rights to Medicaid is at the point-of-sale when a recipient uses a Medicaid card to get prescription drugs.

Fourth, the Centers for Medicare and Medicaid Services ("CMS"), the federal agency charged with administering the Medicaid statute, has interpreted the statute to mean that a beneficiary's assignment of rights occurs at the time that the beneficiary requests prescription drugs — in other words, at the point-of-sale.  In response to a request by Caremark to the United States

Department of Justice, CMS issued a fact sheet regarding the legal obligations of plan sponsors like Caremark to reimburse state Medicaid agencies. (J.A. at 70-72). The fact sheet generated by CMS provides that a health benefit "plan's obligation to honor assignment of benefits made by the participant arises at the time the participant initially *requests* covered pharmaceutical goods, supplies, or services from a pharmacy and *before payment* by Medicaid or any individual or other third party. Thus, the plan remains liable for pharmaceutical goods . . . provided to a participant and paid for by Medicaid at the point of sale to the same extent that the plan would have been liable if billed at the point of sale." (*Id*. at 71) (emphasis added).

An agency advisory opinion is not binding, but "it is worthy of 'some deference.'" *Bank of New York v. Janowick*, 470 F.3d 264, 269 (6th Cir. 2006) (quoting *Christensen v. Harris County*, 529 U.S. 576, 587 (2000)). "Interpretive guidance from administrative agencies that is not the product of formal, notice-and-comment rulemaking is entitled to respect 'to the extent that the interpretations have the power to persuade.'" *Id*. (quoting *Christensen*, 529 U.S. at 587) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)). We find CMS's interpretation of the Medicaid statutory scheme — opining that a Medicaid beneficiary's assignment of rights occurs at the point-of-sale — to be highly persuasive and entirely consistent with federal and Tennessee statutory and regulatory Medicaid frameworks. Thus, CMS's guidance is "entitled to respect" and "some deference" by this Court. *See Christensen*, 529 U.S. at 587 (quoting *Skidmore*, 323 U.S. at 140) (internal quotation marks omitted).

For the foregoing reasons, we conclude that the district court did not err in holding that a Tennessee Medicaid beneficiary's assignment of rights to TennCare occurs at the point-of-sale.

### III.

Alternatively, Caremark argues that even if assignment of the right to reimbursement occurs at the point-of-sale, the beneficiary's obligation to comply with the card presentation and timely filing restrictions still transfers to TennCare, such that TennCare must comply with them. Caremark claims that the district court's decision is fatally flawed because it requires Caremark to reimburse Medicaid even when Caremark has no legal liability to do so, in contravention of 42 U.S.C. § 1396a(a)(25)(A), and thus improperly bestows greater rights upon the assignee TennCare than the assignor plan participant originally possessed. Caremark further argues that the district court's distinction between "procedural" and "substantive" plan restrictions is unworkable because (1) the district court offers no guidance on which restrictions are procedural versus which are substantive, and thus creates a framework of legal uncertainty, and (2) the differences between procedural and substantive restrictions are indistinguishable because both types of restrictions have the same effect of limiting a beneficiary's coverage under the plan. (Tr. Oral Arg. at 8:43-9:27 (audio recording)).

We are not persuaded by Caremark's arguments, and uphold the district court's conclusions for the reasons stated in its well-reasoned opinion. The district court made a thoughtful distinction between substantive and procedural plan limitations. *See Caremark, Inc*., 395 F. Supp. 2d at 694. Specifically, the district court held that:

> [d]eeming assignment of the beneficiary's right[s] . . . to occur at the [point-of-sale] does not convey to TennCare any greater rights than the beneficiary has under the policy. Substantive coverage limitations would still apply. This construction simply prevents insurance plans from erecting 'procedural' roadblocks to reimbursement that are inconsistent with the anti-discrimination policies set forth in the statutes governing Medicaid.

*Id.*

The analysis employed by the district court, as to the card presentation and timely filing restrictions, is workable and sound, and ensures that the established public policy behind Medicaid's third-party liability provisions — that Medicaid be the payor of last resort — is preserved. The district court did not err in holding that the card presentation and timely filing restrictions are essentially procedural, rather than substantive, in nature. This was a reasonable conclusion because these restrictions deal only with the manner or mode of requesting coverage and not the type or quantum of benefits available to a beneficiary under the plan. Caremark's concern that the distinction between procedural and substantive restrictions is impermissibly obscure is unconvincing because an initial query into whether the restriction is procedural or substantive is merely a threshold, rather than the final and dispositive, inquiry. Under the district court's analysis, the primary and ultimate question is whether a procedural restriction is inconsistent with Medicaid's anti-discrimination policy.

The Medicaid statute provides that private insurers cannot use contractual provisions of their Medicaid plans to discriminate against Medicaid or its beneficiaries. *See* 42 U.S.C. § 1396b(o); 29 U.S.C. § 1169(b)(2). The Medicaid statute "unambiguously prohibits provisions in insurance policies that deny medical coverage on the sole ground that an individual is a [Medicaid] recipient." *Rubin v. Sullivan*, 928 F.2d 898, 900 (9th Cir. 1991). In other words, a private insurer cannot "shift[] responsibility [to pay medical bills] onto the government by contractual fiat[.]" *Evanston Hosp. v. Hauck*, 1 F.3d 540, 543 (7th Cir. 1993).

Specifically, 42 U.S.C. § 1396b(o) provides:

[N]o payment shall be made to a State [by the federal government] . . . for expenditures for medical assistance provided for an individual under its State plan . . . to the extent that a private insurer . . . would have been obligated to provide such assistance but for a provision of its insurance contract which has the effect of limiting or excluding such obligation because the individual is eligible for or is provided medical assistance under the plan.

42 U.S.C. § 1396b(o). Similarly, 29 U.S.C. § 1169(b)(2) states, "A group health plan shall provide that . . . in determining or making any payment for benefits of an individual as a participant or beneficiary, the fact that the individual is eligible for or is provided medical assistance under a State [Medicaid plan] will not be taken into account." 29 U.S.C. § 1169(b)(2).

Turning to the case at hand, it is axiomatic that TennCare (a state agency that does not possess a Caremark card) could never comply with the card presentation requirement. Likewise, because TennCare cannot seek reimbursement from Caremark until it receives a claim from a pharmacy and subsequently discovers that the beneficiary is a dual eligible covered by Caremark, TennCare is often unable to comply with the plans' timely filing limitation. Caremark's procedural plan provisions — the card presentation and timely filing restrictions — inappropriately shift Caremark's responsibility to pay pharmacy benefits on behalf of a plan participant onto the government. *See Evanston Hosp.*, 1 F.3d at 543. As such, these insurance plan provisions effectively act to deny medical coverage on the ground that the plan participant is a Medicaid recipient, in violation of 42 U.S.C. § 1396b(o). Accordingly, we conclude that Caremark's card presentation and timely filing plan restrictions impermissibly discriminate against Medicaid, and thus are invalid as applied.

It is undisputed that a health insurer (such as Caremark) has a legal liability to pay for care and services available under its health plan and that a Medicaid agency (such as TennCare) can seek reimbursement up to the amount of this legal liability. *See* 42 U.S.C. § 1396a(a)(25)(A)-(B). Since, Caremark's card presentation and timely filing plan restrictions as applied to TennCare are not valid, they cannot be applied to reduce or obliterate Caremark's legal liability to pay for pharmaceutical

care and services available under its health plan. Therefore, Caremark's argument — that the district court's opinion improperly confers greater rights on the assignee TennCare than the assignor plan participant originally possessed — cannot succeed. *See id.* § 1396a(a)(25)(A).

## IV.

Caremark's final argument is that the district court's decision violates ERISA because it nullifies two plan restrictions that were selected by plan sponsors. Caremark also submits that any exemption of third-party reimbursement claims from the card presentation and timely filing plan provisions would be preempted by ERISA. We reject these arguments for three reasons.

First, far from preventing third-party claims for reimbursement by Medicaid, ERISA actually requires health benefit plans (like Caremark) to reimburse state Medicaid programs. 29 U.S.C. § 1169(b). Specifically, 29 U.S.C. § 1169(b) provides:

> (b) Rights of States with respect to group health plans where participants or beneficiaries thereunder are eligible for Medicaid benefits
>
> (1) Compliance by plans with assignment of rights
>
> A group health plan shall provide that payment for benefits with respect to a participant under the plan will be made in accordance with any assignment of rights made by or on behalf of such participant or a beneficiary of the participant as required by a State plan for medical assistance approved under title XIX of the Social Security Act [42 U.S.C. § 1396, *et seq.*] pursuant to section 1912(a)(1)(A) of such Act [42 U.S.C. § 1396k(a)(1)(A)] (as in effect on August 10, 1993).
>
> . . . .
>
> (3) Acquisition by States of rights of third parties
>
> A group health plan shall provide that, to the extent that payment has been made under a State plan for medical assistance approved under title XIX of the Social Security Act [42 U.S.C. § 1396, *et seq.*] in any case in which a group health plan has a legal liability to make payment for items or services constituting such assistance, payment for benefits under the plan will be made in accordance with any State law which provides that the State has acquired the rights with respect to a participant to such payment for such items or services.

29 U.S.C. §§ 1169(b)(1) & (3).

Second, although ERISA generally preempts all state laws relating to employee benefit plans subject to Title I of the Act, ERISA specifically provides that its preemption provision does *not* apply to recoupment of Medicaid payments by the States. Namely, 29 U.S.C. § 1144(b)(8) provides in relevant part:

> (8) Subsection (a) of this subsection [providing that ERISA "shall supersede any and all State laws insofar as they may . . . relate to any employee benefit plan"] shall not be construed to preclude any State cause of action –
>
> (A) with respect to which the State exercises its acquired rights under section 1169(b)(3) of this title with respect to a group health plan (as defined in section 1167(1) of this title), or

(B) for recoupment of payment with respect to items or services pursuant to a State plan for medical assistance approved under title XIX of the Social Security Act [42 U.S.C. § 1396, *et seq.*] which would not have been payable if such acquired rights had been executed before payment with respect to such items or services by the group health plan.

29 U.S.C. § 1144(b)(8)(A) & (B).

Third, the United States Department of Labor (DOL), which administers ERISA, concluded in an advisory opinion letter that ERISA requires health benefit plans to reimburse Medicaid agencies and does not preempt reimbursement to a state. (J.A. at 77). Specifically, the DOL stated that ERISA "plainly requires an ERISA plan to pay for covered benefits as required by a State law under which the State, having made Medicaid payments, acquires the rights of a plan participant to receive plan benefits relating to such payments." *Id.* Further, the DOL explained:

ERISA does not preempt a State cause of action to recoup the State's Medicaid payments to the extent that a plan would have been liable to any third party, including the participant or the pharmacists, for those expenses when the drug was dispensed (that is before the State made the payments). State law (including case law) that holds a plan liable for the reimbursement of the State under such circumstances would not be preempted by ERISA, notwithstanding the plan's procedural requirements governing participant benefit claims, including filing time limits.

(*Id.*).

For the reasons explained, the DOL's interpretation of the ERISA statute is highly persuasive and consistent with federal and Tennessee Medicaid statutes and regulations. Thus, the DOL's advisory opinion warrants deference by this Court. *See Christensen*, 529 U.S. at 587 (quoting *Skidmore*, 323 U.S. at 140).

Accordingly, we conclude that the district court's decision is not contrary to ERISA.

## CONCLUSION

For the aforementioned reasons, we **AFFIRM** the district court's denial of Caremark's motion for summary judgment and grant of summary judgment in favor of TennCare and the United States.