**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 24, 2011

No. 09-50727

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellant

v.

CAREMARK, INC.; CAREMARK INTERNATIONAL, INC.; CAREMARK
INTERNATIONAL HOLDINGS, INC.; MEDPARTNERS, INC.,

Defendants - Appellees

Consolidated with
No. 09-51053

STATE OF ARKANSAS; STATE OF CALIFORNIA; STATE OF ILLINOIS;
STATE OF LOUISIANA; STATE OF TEXAS; STATE OF DELAWARE;
STATE OF MASSACHUSETTS; DISTRICT OF COLUMBIA; JANAKI
RAMADOS,

Plaintiffs - Appellants

v.

CAREMARK, INC.; CAREMARK INTERNATIONAL, INC.; CAREMARK
INTERNATIONAL HOLDINGS, INC.;  MEDPARTNERS, INC.,

Defendants - Appellees

Appeals from the United States District Court
for the Western District of Texas

Nos. 09-50727, 09-51053

Before BARKSDALE, DENNIS, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

The United States (the "Government") and the States of Arkansas, California, Illinois, Louisiana, Texas, Delaware, and Massachusetts, as well as the District of Colombia and the relator (collectively, the "State Appellants") sued Caremark, Inc., Caremark International Holdings, Inc., and Caremark Rx, Inc., f/k/a Medpartners, Inc. (collectively "Caremark"), claiming that Caremark violated the False Claims Act ("FCA") by unlawfully denying requests for reimbursement made by state Medicaid agencies. The district court entered a Rule 54(b) final judgment disposing of all of the Government's FCA claims. It also entered several partial summary judgment orders against the State Appellants.

On appeal, the Government argues that the district court erred in holding that: (1) Caremark did not impair an obligation to the Government within the meaning of the FCA when it denied reimbursement requests from state Medicaid agencies; (2) the Government's complaint-in-intervention did not relate back to the relator's complaint; and (3) Caremark did not make false statements when it rejected state Medicaid agencies' reimbursement requests on grounds that precluded the agencies from recovering money owed to the program.

In a separate appeal, the State Appellants sought and received from the district court a certification order under 28 U.S.C. § 1292(b) on eight of the district court's orders granting partial summary judgment to Caremark or denying the State Appellants' motions for summary judgment, and we permitted the State Appellants' interlocutory appeal. The State Appellants argue that the district court erred in holding that: (1) *Caremark, Inc. v. Goetz*, 480 F.3d 779 (6th Cir. 2007), only established that Medicaid was the "payor of last resort"; (2) plan restrictions are not false statements under the FCA if they exist in the client's

2

plan; (3) Caremark's good faith confusion about the applicable law was legally relevant to the element of falsity, which is a necessary element for FCA liability; (4) the out-of-network, preauthorization, and "billed-submitted" examples of Caremark's denials of reimbursement requests were not false; and (5) Caremark's conduct was not actionable under the Arkansas Medicaid Fraud False Claims Act (the "Arkansas FCA").[1]  We consolidated the appeals.

We AFFIRM the district court's conclusion that Caremark did not make "false" statements when it stated that it rejected reimbursement requests based on restrictions that were contained in a client's plan.  Additionally, we hold that the district court correctly held that out-of-network restrictions are substantive limitations that can be applied to Medicaid.

However, we REVERSE the district court's holding that the Government cannot bring a claim under 31 U.S.C. § 3729(a)(7) under the facts alleged because we conclude that Caremark may be held liable under that section for causing the state Medicaid agencies to make false statements to the Government.  Additionally, we VACATE the district court's holding that the Government's complaint-in-intervention does not relate back to the relator's complaint, as this conclusion has been superseded by statute.  We also VACATE the district court's decision that preauthorization requirements are substantive limitations that can be applied to Medicaid.  Finally, we REVERSE the district court's holding that the Arkansas FCA does not allow liability for reverse false claims.  We REMAND for proceedings consistent with this opinion.

---

[1] The district court's certification order indicated three issues as to which certification was appropriate: (1) whether Caremark's statements "are not false as a matter of law"; (2) whether the orders in question properly construe and apply the legal standard clarified by the Sixth Circuit in *Goetz*; and (3) whether Caremark's conduct is actionable under the Arkansas FCA.  We note that "it is the order, not the question, that is appealable" on an interlocutory appeal such that we can consider all issues material to the certified order. *Castellanos-Contreras v. Decatur Hotels LLC*, 622 F.3d 393, 398-99 (5th Cir. 2010) (en banc). Nevertheless, where an issue is not fully developed in the district court, we may decline to reach it.  *See Sw. Bell Tel., L.P. v. City of Hous.*, 529 F.3d 257, 263 (5th Cir. 2008).

## I.  BACKGROUND AND PROCEDURAL HISTORY

Caremark is a pharmacy benefits management company ("PBM") that administers pharmacy benefits for its clients, which include insurance companies, managed care organizations, and public and private health plans and organizations.  Caremark's role is to manage its clients' plans in accordance with each plan's provisions.  Each plan has benefits and restrictions, such as only covering prescriptions filled at certain pharmacies or requiring preauthorization for a prescription to be covered by the plan.

### A.    Statutory Background

Some people who are eligible under a plan administered by a PBM are also eligible for Medicaid.  These individuals, referred to as dual-eligible individuals,[2] sometimes identify themselves at a pharmacy as Medicaid recipients instead of privately-insured individuals, thus resulting in a state Medicaid agency paying the bill.  However, if the state Medicaid agency discovers that a Medicaid recipient is a dual-eligible individual, the agency *must* seek reimbursement from the private insurer (known as a "third party") under federal law.  42 U.S.C. § 1396(a)(25).  In addition to requiring state Medicaid agencies to seek reimbursement from third parties, federal law directs the States to enact laws that require Medicaid recipients to assign their rights to receive payments from any third party to the state Medicaid agency.  42 C.F.R. §§ 433.137-.254 (2009).

State Medicaid agencies receive substantial funding from the Government. *See* 42 C.F.R. § 433.140; *Ark. Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 275 (2006) ("The [Medicaid] program is a cooperative one; the Federal Government pays between 50% and 83% of the costs the State incurs for patient care . . . .").  However, the Government does not provide federal funding (known as federal financial participation or "FFP") if a State is able to recover funds

---

[2] In this opinion, the phrase "dual eligible" does not mean an individual covered by both Medicare and Medicaid, as the term is sometimes used.

from a third party.  42 C.F.R. § 433.140; *Ahlborn*, 547 U.S. at 289.  Additionally, if the Government provides FFP and the State later recovers from a third party, federal law requires the State to return a portion of the reimbursement to the Government.  42 C.F.R. § 433.140(c).

## B.    Plaintiffs' Claims

In 1999, the relator, a former Caremark employee, filed a *qui tam* action on her own behalf and on behalf of the United States, Arkansas, California, Florida, Illinois, Louisiana, Tennessee, and Texas, claiming that Caremark violated the FCA and similar state laws by making false statements to avoid liability to the Government and state Medicaid agencies.  In 2005, the United States, Arkansas, Florida, Louisiana, and Tennessee intervened, and California intervened in 2006.  The relator and intervenors claim that Caremark unlawfully denied or rejected reimbursement requests for dual-eligible individuals, and such actions resulted in losses to the Government and the state Medicaid agencies because they had to pay claims that should have been covered by Caremark.  The plaintiffs alleged, among other things, that Caremark assigned "dummy codes" instead of actual pharmacy codes to claims for which Medicaid requested a reimbursement resulting in the unlawful denial of the state Medicaid agencies' requests.  The plaintiffs also alleged that Caremark improperly applied card-presentation, timely-filing, and out-of-network plan restrictions to reject reimbursement requests from state Medicaid agencies.

## C.    Declaratory Judgment: *Caremark, Inc. v. Goetz*

After this suit was filed, Caremark brought a declaratory judgment action in the United States District Court for the Middle District of Tennessee to clarify whether certain pre-existing restrictions were enforceable against Tennessee Medicaid ("TennCare").  *Caremark, Inc. v. Goetz*, 395 F. Supp. 2d 683 (M.D. Tenn. 2005).  Caremark asked the district court to address three restrictions: (1)

card-presentation restrictions; (2) timely-filing limitations; and (3) out-of-network limitations.[3] *Id.* at 688.

The card-presentation restriction requires a plan participant to present a Caremark card at the time of the sale to be covered by the plan. Some plans allow a participant who fails to present a card at the point of sale to submit a request for reimbursement after the fact, which is referred to as a "paper claims" benefit. TennCare and the Government argued that the card-presentation requirement discriminated against Medicaid because Medicaid could not ensure that a dual-eligible participant presented his or her Caremark card at the point of sale. They argued that applying this restriction to dual-eligible individuals resulted in the state Medicaid agencies and the Government paying for prescriptions that should have been covered by Caremark's clients.

Timely-filing limitations impose a restriction on the number of days a plan participant has to submit a request for reimbursement. TennCare and the Government argued that timely-filing limitations discriminate against Medicaid because it is often impossible for state Medicaid agencies to meet the filing deadlines.

Out-of-network limitations provide that plan participants are not covered or are covered at lower rates when the participants fill a prescription at a pharmacy outside of the plan's network. Again, TennCare and the Government argued that this limitation could not be lawfully applied to Medicaid because Medicaid could not ensure that a dual-eligible individual filled a prescription at an in-network pharmacy.

In addressing these claims, the district court distinguished between "procedural" and "substantive" restrictions and concluded that substantive

---

[3] The United States District Court for the Middle District of Tennessee granted the Government's motion to intervene but denied its motion to transfer the case to the Western District of Texas. *Goetz*, 395 F. Supp. 2d at 685.

restrictions could be applied to a state Medicaid agency, but procedural restrictions that discriminated against Medicaid could not. *Id.* at 694. The district court held that the card-presentation and timely-filing restrictions were procedural and discriminated against Medicaid. Therefore, they could not be applied to state Medicaid agencies. *Id.* at 696. The district court did not address the out-of-network restrictions because TennCare and the Government conceded that such restrictions could be applied to Medicaid. *Id.* at 693 & nn.3-4.

The Sixth Circuit affirmed. *Caremark, Inc. v. Goetz*, 480 F.3d 779 (6th Cir. 2007). The court elaborated on the distinction between procedural and substantive restrictions, concluding that procedural restrictions were those that "deal only with the manner or mode of requesting coverage" while substantive restrictions deal with the "type or quantum of benefits available to a beneficiary under the plan."[4] *Id.* at 788. Additionally, only procedural restrictions that discriminate against Medicaid are not enforceable against Medicaid. *Id.* According to the Sixth Circuit, Caremark could not "shift[] responsibility [to pay medical bills] onto the government by contractual fiat[.]" *Id.* (quoting *Evanston Hosp. v. Hauck*, 1 F.3d 540, 543 (7th Cir. 1993)). The Sixth Circuit found that by enforcing the card-presentation and timely-filing restrictions, Caremark was inappropriately shifting the burden to pay for dual-eligible individuals' pharmacy benefits from Caremark to TennCare. *Id.* at 789.

## D. Summary Judgment Motions

In 2007, after the Sixth Circuit's *Goetz* opinion was released, both sides filed motions for summary judgment in this case. On August 27, 2008, the district court issued an order granting in part and denying in part Caremark's motion for partial summary judgment against the Government and denying the Government's motion for summary judgment (the "Main Order"). *United States*

---

[4] For the action at hand, the district court concluded that *Goetz* was the law of the case and applied *Goetz's* procedural-versus-substantive analysis to the FCA claims.

*ex rel. Ramadoss v. Caremark Inc.*, 586 F. Supp. 2d 668, 689 (W.D. Tex. 2008). The district court also granted Caremark's motions for partial summary judgment against the State Appellants and denied the State Appellants' motions for summary judgment. On June 19, 2009, the district court granted the Government's motion for entry of a partial final judgment pursuant to Federal Rule of Civil Procedure 54(b), concluding that the Main Order "fully dispose[d] of all claims asserted by the United States, on behalf of the Centers for Medicare and Medicaid Services ("CMS"), to recover monies allegedly due to Medicaid." On October 2, 2009, the district court entered a certification order to the State Appellants permitting them to appeal the eight partial summary judgment orders. The Government and the State Appellants timely appealed to this court, and we permitted the State Appellants' interlocutory appeal.

## II. STANDARD OF REVIEW AND JURISDICTION

We review a grant of summary judgment *de novo*, applying the same standard as the district court. *Gen. Universal Sys. v. HAL Inc.*, 500 F.3d 444, 448 (5th Cir. 2007). Summary judgment is appropriate if the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).[5] The evidence must be viewed in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). Additionally, because we have jurisdiction over the State Appellants' appeal pursuant to 28 U.S.C. § 1292(b), our "review only extends to controlling questions of law." *Castellanos-Contreras,* 622 F.3d at 397. "Further, the court's inquiry is limited to the summary judgment record before the trial court." *Id.*

---

[5] Effective December 1, 2010, Federal Rule of Civil Procedure 56 has been amended, and the summary judgment standard is now reflected in Rule 56(a). The amended Rule 56 contains no substantive change to the summary judgment standard. Therefore, we cite to the amended rule.

Nos. 09-50727, 09-51053

The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1345, and 1367, as well as 31 U.S.C. § 3732. We have jurisdiction over the Government's appeal of the final judgment pursuant to 28 U.S.C. § 1291. The district court entered a Rule 54(b) partial final judgment against the Government on June 18, 2009. This partial judgment covered two issues: (1) "the United States' claims asserted under the [FCA] for the recovery of monies allegedly due to Medicaid"; and (2) "the United States' common law claim of recoupment for moneys allegedly due Medicaid."

We have jurisdiction over the State Appellants' appeal pursuant to 28 U.S.C. § 1292(b), which gives a district judge discretion to certify an order that "involves a controlling question of law as to which there is substantial ground for difference of opinion" and where the judge concludes "that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ." The district judge certified all eight of its partial summary judgment orders to this court. We have discretion to grant the district court's certification order. *United States v. Garner*, 749 F.2d 281, 286 (5th Cir. 1985). This court granted the State Appellants' petition for leave to appeal and consolidated it with the Government's appeal.

## III. DISCUSSION

### A. Did Caremark violate § 3729(a)(7) when it denied reimbursement requests from state Medicaid agencies?

Claims under 31 U.S.C. § 3729(a)(7) require proof that the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(7).[6] This is known as a reverse false

---

[6] Unless otherwise noted, citations to 31 U.S.C. § 3729 refer to the statute as it applied to Caremark's conduct prior to 2009, before Congress amended this section in the Fraud Enforcement and Recovery Act of 2009 ("FERA" or "the 2009 amendments"). We cite to the session laws when referring to FERA. The majority of FERA's provisions took effect on May

claim because the effect of the defendant's knowingly false statement is a failure to pay the Government when payment is required. A direct claim, on the other hand, occurs when a false claim for payment is submitted to the Government. *United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 652 (5th Cir. 2004). In this case, the Government contends that Caremark made false statements to the state Medicaid agencies—who receive over half of their funding from the Government—that allowed Caremark to fraudulently avoid making payments to the state Medicaid agencies. This is known as an indirect reverse false claim because the defendant allegedly knowingly made a false statement to a third party, knowing that its statement would "conceal, avoid, or decrease" an obligation to the Government. 31 U.S.C. § 3729(a)(7).

The Government appeals the district court's conclusion that "Caremark does not have any obligation to the Government for denials of reimbursement requests that Caremark submitted to state Medicaid agencies." *United States ex rel. Ramadoss*, 586 F. Supp. 2d at 692. The Government makes two arguments as to why the district court was incorrect: (1) the Government provides direct funding for state Medicaid agencies, and because defrauding a state Medicaid agency has a direct impact on the Government, it is the same as defrauding the Government itself;[7] and (2) even if Caremark did not owe an "obligation" to the Government, its false statements caused the state Medicaid agencies to make false statements to the Government, which is itself a violation of 31 U.S.C. § 3729(a)(7). Because

---

20, 2009 (with several exceptions, one of which is noted later in this opinion). *See* Pub. L. No. 111-21, 123 Stat. 1617, 1625 (2009).

[7] Caremark relies heavily on *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662 (2008), to support its argument that an obligation to a federally-funded entity is not an obligation to "the Government." We find it unnecessary to address whether *Allison Engine* would require such a conclusion, however, because we conclude that Caremark may nonetheless be held liable under § 3729(a)(7) for causing the state Medicaid agencies to impair their obligations to the Government.

we agree with the Government on the second point, we need not address the first point.

The Government argues that even if Caremark does not owe an "obligation" directly to "the Government," it may be held liable for causing the States to impair their obligations to the Government.[8]  Section 3729(a)(7) provides that a person who *causes* a false statement to be made "to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government" is liable under the FCA.  31 U.S.C. § 3729(a)(7); *see also United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 378 (5th Cir. 2004) ("The FCA applies to anyone who knowingly assists in causing the government to pay claims grounded in fraud, without regard to whether that person has direct contractual relations with the government." (internal quotations and citations omitted)).

Two cases have interpreted § 3729(a)(7) to allow liability for indirect reverse false claims.  *See United States ex rel. Hunt v. Merck-Medco Managed Care, L.L.C.*, 336 F. Supp. 2d 430, 444-45 (E.D. Pa. 2004); *United States ex rel. Koch v. Koch Indus., Inc.*, 57 F. Supp. 2d 1122, 1128-29 (N.D. Okla. 1999).  In *Hunt*, the relator claimed that Merck-Medco, a PBM, violated the FCA by making false statements to Blue Cross/Blue Shield, a health insurance company that provided health insurance to federal employees.  *Hunt*, 336 F. Supp. 2d at 444.  Merck-Medco argued that it did not owe an obligation to the Government because its obligation was to Blue Cross/Blue Shield and the statute required the obligation

---

[8] We reject Caremark's argument that the Government failed to raise this issue to the district court.  The Government made this argument in its opposition to summary judgment and in additional briefing to the district court after the district judge told the parties that he agreed with Caremark's argument on this issue.  Because this material issue was raised in the district court and is therefore encompassed in its orders granting Caremark summary judgment, we have jurisdiction over this issue although the district court did not expressly discuss it.  *See Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996) (noting that under 28 U.S.C. § 1292, "the appellate court may address any issue fairly included within the certified order because it is the *order* that is appealable, and not the controlling question identified by the district court" (internal quotations omitted)).

to be owed directly to the Government. *Id.* The Court rejected this "direct privity" argument, ruling that the statute allowed liability if the party caused a false statement "to be made or used." *Id.* The court concluded that "[t]he fact that Medco may not have been in direct contractual privity with the Government . . . is not an automatic bar to § 3729(a)(7) liability." *Id.* The court accepted the Government's argument that because "any contractual penalties owing from Medco to Blue Cross [were] required by law to be turned over to the Government, . . . the distinction between Medco and Blue Cross [was] legally worthless." *Id.* Because of this "unique relationship," the "predictable, even certain, consequence of its actions (or inactions) would and could be to reduce the amount of money owed to a party (Blue Cross) that it knew was in direct contractual privity with the Government." *Id.*

Similarly, in *Koch*, the relator argued that the defendants violated § 3729(a)(7) by making false statements to a party who had mineral leases with the Government. *Koch*, 57 F. Supp. 2d at 1124. The defendants argued that they could not be held liable under § 3729(a)(7) because they made statements to the lessee, not to the Government. *Id.* at 1127. The court disagreed, noting that the defendants' false measurements may have "*caused* the lessee or operator to understate its royalty obligation to the Government." *Id.* at 1129 (emphasis added). The court rejected the defendants' argument that "because subsection (a)(7) and (c) [which defined the term "claim" for purposes of the FCA] were added at the same time, the absence of any reverse false claim language in subsection (c) conclusively demonstrates that Congress did not intend the FCA to impose liability for indirect reverse false claims." *Id.* at 1128. The court noted that "[w]hile it is true that Congress did not explicitly include indirect reverse false claims within the gambit of the FCA, it is not clear to this Court that Congress intended to exclude them." *Id.* at 1129. Instead, the court concluded that

Congress's intent was to expand the FCA "to reach further to protect the Government from fraud due to false filings." *Id.* at 1128.

We have also interpreted a prior version of the FCA to encompass indirect reverse false claims. *Smith v. United States*, 287 F.2d 299 (5th Cir. 1961). In *Smith*,[9] the defendant made false claims for payment to the Beaumont Housing Authority ("BHA") and also made false statements to the BHA to avoid financial obligations. *Id.* at 300, 303-04. The court accepted the indirect reverse false claim theory because "the False Claims Act applies *even where there is no direct liability running from the Government to the claimant.*" *Id.* at 304 (emphasis added). The court reasoned that had the BHA "not made these payments and had they not been reflected in the quarterly reports, the Government, in one quarter, would have received more rent and in the other would have made a lesser payment. The expenses were therefore ultimately borne by the United States Treasury." *Id.*

The States have a legal duty to return federal funds if they are able to recover from third parties. 42 C.F.R. § 433.140 ("If the State receives FFP in Medicaid payments for which it receives third party reimbursement, the State must pay the Federal government a portion of the reimbursement . . . ."). The States also have a legal duty to seek reimbursement from a third party for dual-eligible individuals. 42 U.S.C. § 1396a(a)(25)(A) (requiring the States to "take all reasonable measures to ascertain the legal liability of third parties" and to seek reimbursement for medical assistance to the extent of any third party's legal liability); 42 C.F.R. § 433.139(b)(1) (requiring the state agency to reject a claim and return it to a third party for a determination of the amount of liability).

---

[9] We note that the district court rejected the Government's reliance on *Smith* because it incorrectly concluded that the lessee leased directly from the Government. However, *Smith* was not a case against the lessee, but against the lessee's chief executive. 287 F.2d at 300. The executive argued that he did not personally "make or cause to be made . . . any claim upon or against the Government . . . ." *Id.* at 304. As noted above, we held that the FCA "applies even where there is no direct liability running from the Government to the claimant." *Id.*

These requirements impose an obligation on the States to the Government.  If Caremark made false statements that an individual is not covered by a plan, these false statements would cause the state Medicaid agencies to pay for the prescription and seek reimbursement from the Government rather than from Caremark.  This, in turn, would cause the States to receive and to keep federal funds to which they would not otherwise be entitled.  Caremark's actions therefore could have impaired the States' obligation to the Government under 42 U.S.C. § 1396a(a)(25).  The *Smith, Hunt*, and *Koch* cases are instructive because they all allow FCA liability for knowingly making a false statement that will cause a third party to impair its obligation to the federal government.  *Smith*, 287 F.2d at 304; *Hunt*, 336 F. Supp. 2d at 444-45; *Koch*, 57 F. Supp. 2d at 1128-29.   The statute does not require that the statement impair the *defendant's* obligation; instead, it requires that the statement impair "*an* obligation to pay or transmit money or property to the Government."  31 U.S.C. § 3729(a)(7) (emphasis added).  We hold that if the Government is able to prove that Caremark knowingly made false statements to the States knowing that these statements could cause the States to impair their obligation to the Government, Caremark will be liable under § 3729(a)(7).  Because Caremark's allegedly false statements could have caused the state Medicaid agencies to impair their obligations to the Government, we conclude that the district court erred in granting summary judgment to Caremark on its § 3729(a)(7) claims based upon the argument that the statute, on its face, does not apply to Caremark in the circumstances presented here.

**B.     When a relator initiates an FCA suit in which the Government later intervenes, does the Government's complaint-in-intervention relate back to the relator's complaint?**

Caremark concedes that the district court's analysis has been superceded by statute, and we agree.  In FERA, Congress specified that the Government's complaint-in-intervention "shall relate back to the filing date of the complaint of the person who originally brought the action, to the extent that the claim of the

Government arises out of the conduct, transactions, or occurrences set forth, or attempted to be set forth, in the prior complaint of that person." Pub. L. No. 111-21, § 4(b), 123 Stat. 1617 (2009). Unlike other sections of FERA, Congress specifically stated that this provision "shall apply to cases pending on the date of enactment." *Id.* § 4(f). Because this case was pending on the date FERA was enacted, the Government's complaint-in-intervention relates back to the relator's complaint. Therefore, we vacate the district court's order on this issue.

## C. Did Caremark make false statements when it rejected Medicaid reimbursement requests based on restrictions that were contained in a client's plan?

Both the State Appellants and the Government argue that the district court erred in holding that statements "where Caremark denied Medicaid reimbursement requests based on restrictions that were contained in a client's plan" were not "false" statements subject to liability through application of § 3729(a)(7). The State Appellants challenge the district court's conclusion that a true statement cannot be false under the FCA. They argue that a factually true statement can still be false if it is "legally impermissible." The Government challenges the district court's conclusion that a claim is not false when there is a legitimate good faith disagreement about the applicable law. It argues that an ambiguity in the governing law does not preclude falsity; rather, the existence of an ambiguity concerns whether the defendant acted knowingly, which is a distinct element under the FCA. Thus, we focus our attention in this section on "false" rather than "knowingly."

Our analysis of this question is hampered by the fact that we are deciding this case on an extremely limited record. The State Appellants' appeal is a certified appeal under 28 U.S.C. § 1292(b), and our review only extends to "controlling questions of law." *Castellanos-Contreras,* 622 F.3d at 397. The Government's appeal is pursuant to a Rule 54(b) final judgment, but because the Government's claims were disposed of early in the case, the record was not fully

developed. The district court's opinion merely held that factually true statements made prior to *Goetz*, when the law was unclear, cannot constitute a false statement for purposes of the FCA. Not raised in this appeal is the question of whether factually true statements can be false post-*Goetz*, as the district court has not yet reached this issue.

Since false is the opposite of true, statements that are factually true are not false statements about the facts. Indeed, neither the State Appellants nor the Government argue that the statements at issue in this appeal were factually incorrect. Instead, they argue that Caremark's true statements that it denied requests for reimbursement because the participants' plans did not have a paper claims provision were untrue because Caremark was not legally permitted to deny those requests. The State Appellants rely on *United States v. Bourseau*, 531 F.3d 1159 (9th Cir. 2008), to support their argument. In *Bourseau*, the Ninth Circuit noted that "courts decide whether a claim is false or fraudulent by determining whether a defendant's representations are accurate in light of applicable law." *Id.* at 1164.

We need not decide whether we agree with *Bourseau*'s analysis because we decline to go farther than the matter addressed by the district court—whether stating that a request was denied for a reason stated in a client's plan is a "false statement." We conclude it is not. If, indeed, Caremark went further and stated that its conduct was in compliance with the law or otherwise certified the legal effect of its actions, that may present a different question, one we do not reach. Therefore, we reject the State Appellants' and the Government's argument that the district court erred in holding factually true statements, without more, were not false for purposes of the FCA.

## D.     Did the district court err in its interpretation of *Goetz*?

The State Appellants argue that the district court erred in concluding that "beyond availing that Medicaid is the 'payor of last resort,' *Goetz* did not establish

that Medicaid regulations specifically prevent PBMs from applying existing restrictions." *United States ex rel. Ramadoss*, 586 F. Supp. 2d at 689. We decline to address the district court's interpretation of *Goetz* as a stand-alone issue. Instead, we will address it as part of the analysis of the substantive contentions on appeal.

**E.    Did the district court err in applying the *Goetz* procedural-versus-substantive test to out-of-network, preauthorization, and billed-amount plan restrictions?**

Both the State Appellants and the Government argue that the district court erred in applying *Goetz* to the facts of this case because Caremark's reliance on out-of-network and preauthorization requirements are false as a matter of law under *Goetz*. The State Appellants also argue that the district court erred in finding that Caremark's "billed/submitted amount" and "amount billed used for pricing" (referred to as the "billed-amount" restrictions) were not false under *Goetz*. We address each argument below.

### 1.    Out-Of-Network Restrictions

Addressing a specific example of an allegedly false statement, the district court held that an out-of-network "restriction is substantive as it affects the type or quantum of coverage under a plan, instead of the manner or mode of reimbursement" because it "[l]imit[s] the pharmacies at which a plan participant can fill prescriptions . . . ." *United States ex rel. Ramadoss*, 586 F. Supp. 2d at 710. The district court noted that this has "nothing to do with the manner or mode of seeking reimbursement." The Government essentially concedes that out-of-network restrictions are not at issue in this appeal. The Government merely argues that the district court erred to the extent that it would apply this reasoning to "Caremark's practice with respect to Medicaid reimbursement requests to which it *did* assign . . . dummy code[s]."

We conclude that this point of error is meritless because the district court made clear that "for claims that actually allege Caremark made a false statement, for example, that a reimbursement request was denied based on a restriction that was not in a corresponding plan [e.g., dummy codes], those claims may be permissible under the FCA." *Id.* at 686 n.20. The district court granted summary judgment on the out-of-network example mentioned by the Government in its brief because there was evidence that Caremark did *not* use a "dummy code" in processing that particular claim. There was evidence that the prescription was processed at an out-of-network pharmacy, so Caremark's statement that it denied the reimbursement request for that reason was not false. The Government does not deny that this was the correct ruling on this particular example; therefore, its complaint on this issue is without merit.

2.      Preauthorization Requirements

The district court also held that preauthorization is a "substantive restriction as it affects the type or quantum of coverage under a plan, instead of the mode or manner of reimbursement." *United States ex rel. Ramadoss*, 586 F. Supp. 2d at 715. The Government argues that because Medicaid cannot comply with a preauthorization requirement, "Caremark cannot lawfully apply the restriction to deny reimbursement requests." The Government claims that the preauthorization requirement is procedural because it "deals only with the manner or mode of requesting coverage."

We conclude that further factual development on this issue is necessary. From this limited record, we cannot determine whether the preauthorization requirement functions as a "'procedural' roadblock[] to reimbursement," *Goetz*, 395 F. Supp. 2d at 694, or a substantive limitation on coverage. For example, if Caremark's preauthorization requirement involves a decision about whether to grant or deny requests for certain medications based on the medical needs of its members, the requirement may be considered substantive. By contrast, if

preauthorization merely functions as a box to be checked in order for a patient to obtain a drug, entailing no discretion on the part of Caremark about whether the request should be granted, the restriction may be procedural. On this limited record, we cannot make this determination; therefore, we remand for further factual development.

### 3.   Billed-Amount Restrictions

Texas argues that the district court erred in concluding that Caremark did not make false statements when it rejected requests for reimbursement from Texas Medicaid because "Texas failed to provide the billed/submitted charge and the Medicaid paid/allowed amounts." We conclude that it is unnecessary to address this issue because Texas did not dispute the district court's conclusion that the Texas FCA did not contain a provision allowing reverse false claims prior to September 1, 2005. The denials for reimbursement requests that Texas now challenges occurred from 1999 to 2000. Because these are alleged reverse false claims that occurred prior to 2005, they would not be allowed under the district court's unchallenged interpretation of the Texas FCA. Therefore, we do not address them.

### F.    Did the district court err in concluding that Caremark's conduct is not actionable under the Arkansas FCA?

The district court held that the Arkansas FCA does not allow reverse false claims. As noted above, a reverse false claim is a false statement that enables a party to avoid making a payment to the government. The district court reasoned that "[u]nlike the federal False Claims Act . . . , the Arkansas [FCA] does not contain a reverse false claims provision." *See* No. SA-99-CA-00914-WRF, *United States ex rel. Ramadoss v. Caremark Inc.*, Order Denying Arkansas' Motion for Summary Judgment and Granting in Part Caremark's Cross Motion for Partial Summary Judgment at 3 (W.D. Tex. Aug. 27, 2008). It also noted that "the Arkansas FCA is more narrowly tailored and only creates liability for false claims

or applications used to secure benefits or payments *from* Arkansas Medicaid (rather than avoiding a payment *to* Arkansas Medicaid)." *Id.*

In its relevant provisions, the Arkansas FCA provides for a claim against any person who: "[k]nowingly makes or causes to be made any false statement or representation of a material fact in any application for any benefit or payment under the Arkansas Medicaid program," ARK. CODE ANN. § 20-77-902(1) (2003); "knowingly makes or causes to be made any false statement or representation of a material fact for use in determining rights to a benefit or payment," *id.* § 20-77-902(2); "[h]aving knowledge of the occurrence of any event affecting his or her initial or continued right to any benefit or payment or the initial or continued right to any benefit or payment of any other individual in whose behalf he or she has applied for or is receiving a benefit or payment knowingly conceals or fails to disclose that event with an intent fraudulently to secure the benefit or payment either in a greater amount or quantity than is due or when no benefit or payment is authorized," *id.* § 20-77-902(3); "[k]nowingly makes or causes to be made or induces or seeks to induce the making of any false statement or representation of a material fact . . . [w]ith respect to information required pursuant to applicable federal and state law, rules, regulations, and provider agreements," *id.* § 20-77-902(8)(B); or "[k]nowingly makes or causes to be made any false statement or representation of a material fact in any application for benefits or for payment in violation of the rules, regulations, and provider agreements issued by the program or its fiscal agents," *id.* § 20-77-902(10).

Based on the text of the statute, we conclude that the district court did not err in holding that Sections 20-77-902(1), (2), (3), and (10) cannot be interpreted to allow liability for a reverse false claim. These subsections use the terms "benefit" and "payment," both of which imply a payment or transfer of services from the State of Arkansas to an individual, rather than a means to avoid an obligation to pay money to the State of Arkansas. Although Arkansas correctly

argues that some federal courts (including the Fifth Circuit) interpreted the pre-1986 version of § 3729(a) to encompass reverse false claims even though it did not include an express provision for such claims, *see, e.g., Smith*, 287 F.2d 299, Caremark's argument that Arkansas enacted the Arkansas FCA *after* Congress amended § 3729(a) to include a provision for reverse false claims liability is persuasive. Arkansas could have included a section that mirrored § 3729(a)(7), but it chose not to do so.

However, we conclude that the district court erred in finding that no provision of Section 20-77-902 of the Arkansas FCA could allow liability for a reverse false claim. For example, under Section 20-77-902(8)(B), Caremark could be held liable for knowingly making a false statement with respect to information required to be provided under either Arkansas or federal law. ARK. CODE ANN. § 20-77-902(8)(B) (2003). Section 20-77-306 of the Arkansas Code provides that third parties (such as Caremark) are legally liable to reimburse Medicaid for the full amount of "any medical cost of an injury, disease, disability, or condition requiring medical treatment for which Medicaid has paid, or has assumed liability to pay . . . ." ARK. CODE ANN. § 20-77-306(b) (2009).

Section 20-77-902(8)(B) is even broader than the language found in both the pre-1986 version of 31 U.S.C. § 3729(a) and the current version of § 3729(a)(7), which requires proof that the person "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." Section 20-77-902(8)(B) of the Arkansas FCA makes no mention of an "obligation"; it merely requires proof that the person make a false statement "[w]ith respect to information required pursuant to applicable federal and state law, rules, regulations, and provider agreements." ARK. CODE ANN. § 20-77-902(8)(B) (2003). Therefore, we reverse the district court's conclusion that reverse false claims could not be actionable under Section 20-77-902(8)(B) of the Arkansas FCA.

## IV. CONCLUSION

We AFFIRM the district court's entry of summary judgment for Caremark on the Government's and the State Appellants' claims that Caremark made false statements when it cited restrictions that were contained in a client's plan as the reason for rejecting reimbursement requests. We also AFFIRM the district court's conclusion that out-of-network restrictions are substantive limitations that can be applied to Medicaid. However, we REVERSE the district court's conclusions that (1) the Government cannot bring a claim under 31 U.S.C. § 3729(a)(7); and (2) the Arkansas FCA does not allow liability for reverse false claims. Additionally, we VACATE the district court's decisions regarding whether the Government's complaint-in-intervention relates back to the relator's complaint and whether preauthorization restrictions are substantive. We REMAND for proceedings consistent with this opinion.